UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In Re:

        ENGLISH SHEPPARD REALTY CORP.,

            Debtor.
----------------------------------------------------------------x

Chapter 11

No. 99-10393-DTE

## MEMORANDUM DECISION

*Appearances By:*

Department of Justice
*Attorneys for the Office of the United States Trustee – Eastern District of New York*
By: William E. Curtin, Esq. and Alicia M. Leonhard, Esq.
271 Cadman Plaza East
Brooklyn, New York 11201

Law Office of Francis D. Terrell
*Attorneys for Phillip D. Miller*
By: Francis D. Terrell, Esq.
50 Main Street, Suite 1000
White Plains, New York 10606

Law Office of Phillip D. Miller
*Attorneys for Phillip D. Miller*
By: Phillip D. Miller, Esq.
81 Hamilton Drive
Roslyn, New York 11576

Windels Marx Lane & Mittendorf, LLP
*Attorneys for the Debtor*
By: Charles E. Simpson, Esq. and Derek Etheridge, Esq.
156 West 56th Street
New York, New York 10019

Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

On February 4, 2010 the Court held an evidentiary hearing to determine the amount of fees that Phillip D. Miller, Esq. ("Miller") was to disgorge to English Sheppard Realty Corp. (the "Debtor"). The hearing was necessitated by the Summary Order of the U.S. Court of Appeals, Second Circuit ("Second Circuit") issued on April 28, 2009. At the conclusion of the hearing, the parties were instructed to file proposed findings of facts and conclusions of law. Upon due deliberation and consideration of the evidence presented at the hearing, the Court finds that Miller must disgorge the amount of $146,000.00 to the Debtor's estate.

The Court makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### BACKGROUND:

A. The Debtor's Bankruptcy Case

Miller filed the Debtor's chapter 11 petition on January 11, 1999, and acted as Debtor's bankruptcy counsel, without an order of retention, until April 18, 2001. The Debtor's only asset was the real property located at 1325 Union Street, Brooklyn, New York ("1325 Union Street"). 1325 Union Street was a twenty-seven unit apartment building. The Debtor's Local Rule 1007-3 Affidavit states that the nature of the Debtor's business was the "ownership and management of a 27 unit residential apartment building ("premises")." On January 26, 2000 Judge Duberstein, the then-presiding bankruptcy judge in this case, entered an order authorizing the Debtor to sell 1325 Union Street to NMF Properties, LLC, assignee of Neal Mark Friedfertage ("Friedfertag") for $670,000.00 (the "Sale Order").[1]

The Sale Order provided that, after satisfaction of liens and costs of sale, "[t]he remaining portion of the sale proceeds shall be paid to the Debtor by payment to Debtor's counsel to be

---

[1] In connection with the sale Friedfertag made an earnest money deposit in the amount of $42,500 on December 31, 1999.

2

held in *escrow pending confirmation of Debtor's Chapter 11 Plan of Reorganization and distribution pursuant to Court Order*." (emphasis added). The net proceeds of the sale, in the amount of $245,253.59, were deposited into Miller's IOLA account (UST's Ex. C). As of January 28, 2000, Miller had $287,743.59 of the Debtor's bankruptcy estate's funds in his IOLA Account. This account held commingled funds deposited by Miller from other sources, including ABSR Realty Holding Corp. ("ABSR"). Miller did not create a separate account in which to deposit the Debtor's funds.

While Miller was acting as Debtor's counsel, he was also performing other legal services for the Debtor's principal, Dr. Josephine English. Miller incorporated ABSR for Dr. English, on July 1, 1999, which was after the Debtor filed for bankruptcy. The Certificate of Incorporation was filed with the State of New York on August 1, 1999. In furtherance of incorporating ABSR, Miller kept and maintained the corporate records, signed corporate resolutions, signed and adopted the by-laws and conducted the first shareholders meeting (at which he was the only person present). While Miller maintained that he was the attorney in fact for Dr. English with respect to ABSR, he did not produce a power of attorney.

In addition to the Debtor's property, the twenty-seven unit building referred to herein, Dr. English also owned two vacant lots in Brooklyn, Lot 43 and Lot 48 (the "Lots"), which were encumbered by two tax liens for $34,568.68 and $26,364.21, respectively. On or about March 29, 2000, in violation of the Sale Order, Miller used $246,341.21 of the Debtor's net proceeds from the sale of the Debtor's property to purchase 100% of the stock in ABSR on behalf of Dr. English, who owned ABSR.[2] After the stock purchase, Dr. English assigned title to the Lots to ABSR. When Miller used the Debtor's net surplus funds to purchase 100% of the stock of ABSR, the Debtor became the owner of the Lots. The Lots were then sold by the Debtor for $3

---

[2] Some of those monies were used to pay off the tax liens on the Lots.

3

million pursuant to a Court Order dated June 27, 2002. The Second Circuit noted in its Summary Order that both the Debtor and the Trustee conceded that the transactions were ultimately a benefit to the Debtor's estate.

### B. The Second Circuit's Summary Order

On or about April 20, 2001, the Debtor filed an application to retain Windels Marx Lane & Mittendorf, LLP ("Windels Marx") as its counsel, replacing Phillip D. Miller, Esq. as Debtor's counsel (the "Windels Retention Application"). On May 1, 2001 Judge Duberstein entered an order approving the retention of Windels Marx as the Debtor's bankruptcy counsel under 11 U.S.C. § 327(a) *nunc pro tunc* to April 18, 2001. During the entire time that Miller acted as Debtor's counsel, Judge Duberstein never entered an order approving Miller's retention. Miller, however, was paying himself legal fees without Court authorization or approval.

In October 2001 the United States Trustee filed a motion for an order directing Miller to disgorge all fees that he had received from the Debtor, the Debtor's principal and any entity related to the Debtor. After several adjournments, and the transfer of this case to this Court from Judge Duberstein, this Court heard arguments and entered an Order on June 19, 2006 requiring Miller to disgorge $298,000.00 and to turn the monies over to the Debtor (the "June 19 Order"). The June 19 Order also denied Miller's motion for compensation and reimbursement of expenses. Miller appealed, and on September 19, 2007 the District Court affirmed the June 19 Order. Miller then filed an appeal of the District Court's order.

Courts have "wide discretion in deciding fee awards" and determining the appropriate compensation that should be paid to counsel. *In re Angelika Films 57th*, 227 B.R. 29, 43 (Bankr. S.D.N.Y. 1998). Failure to receive court approval authorizing counsel to be retained under section 327(a) is cause alone for denying compensation under § 330(a)(1) for any services

4

rendered. *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) ("Adhering to conventional doctrines of statutory interpretation, we hold that § 330(a)(1) does not authorize compensation awards to debtor's attorneys from estate funds, unless they are employed as authorized by § 327."); *In re Aponte*, 2010 Bankr. LEXIS 338, at *7 (Bankr. E.D.N.Y. Jan. 25, 2010); *In re Moon*, 385 B.R. 541, 549-550 (Bankr. S.D.N.Y. 2008); *In re Crafts Retail Holding Corp.*, 378 B.R. 44, 49 (Bankr. E.D.N.Y. 2007) ("An attorney not employed as provided by § 327 is simply not included within the class of persons eligible for compensation" under section 330(a)(1)). It is appropriate for the Court to order the disgorgement of fees if counsel fails to disclose fees. *See In re Arlan's Dept. Store, Inc.*, 615 F.2d 925, 937-38 (2d Cir. 1979).

By Summary Order dated April 28, 2009, the Second Circuit affirmed that portion of this Court's Order requiring Miller to disgorge attorneys' fees that he paid to himself as well as this Court's denial of Miller's request for compensation and reimbursement of expenses. The only issue that was remanded to this Court was the amount of fees to be disgorged by Miller.

The Second Circuit was uncertain as to how much of the $298,000.00 sum was derived from fees that Miller paid to himself from the Debtor's funds and how much was from other disbursements unrelated to fees. As such, the Second Circuit remanded the issue for this Court to make that determination. Pursuant to the Second Circuit's Summary Order, this Court conducted an evidentiary hearing on February 4, 2010 on the sole issue of how much Miller would have to disgorge to the Debtor's estate. At the conclusion of the hearing, the Court instructed the parties to file proposed findings of facts and conclusions of law.

## DISCUSSION:

Section 327(a) allows a chapter 11 debtor "with the court's approval . . . to employ one or more attorneys…." 11 U.S.C. § 327(a) (2010). In conjunction with section 327(a), section

330(a)(1)(A) provides that "[a]*fter notice* to the parties in interest and the United States Trustee *and a hearing* . . . the court may award … reasonable compensation for actual, necessary services rendered..." to a person employed under section 327.  11 U.S.C. § 330(a)(1) (2010) (emphasis added); *In re Bartmann*, 320 B.R. 725, 742 (Bankr. N.D. Okla. 2004) ("Professionals who render services to the estate without first obtaining an order authorizing their employment are effectively volunteers.").  "The approach within the Second Circuit 'has uniformly been to decide Bankruptcy Code and Rule disclosure violations with an inflexible standard.  No exceptions are to be made based upon inadvertency (slipshodness) or good faith.'"  *In re Laferriere*, 286 B.R. 520, 526 (Bankr. D. Vt. 2002) (internal citations omitted).  As stated by the court in *In re Nana Daly's Pub, Ltd.*, the notice and hearing requirements of section 330(a)(1)(A):

> gives the court an opportunity to monitor the case and control costs involved in the reorganization process, provides the creditors and other parties in interest an opportunity to be apprised of unusual expenditures, particularly those for attorneys and other professionals' fees, and to preserve available funds wherever necessary to fund a plan of reorganization.

67 B.R. 782, 786 (Bankr. E.D.N.Y. 1986).

Miller's retention as Debtor's counsel was never approved by Judge Duberstein or this Court.  Nor was Miller authorized to use the Debtor's funds to pay himself legal fees, which is in clear violation of the Bankruptcy Code and the Sale Order.  The only issue before the Court now is how much Miller will have to disgorge to the Debtor due to his improper use of Debtor's funds to pay himself without a Court order.  At the evidentiary hearing held by this Court on February 4, 2010, the United States Trustee introduced into evidence an accounting prepared by Miller of his IOLA accounts.  Miller's accounting provided a breakdown of the funds of the Debtor (the "Debtor's Accounting") and the funds of ABSR (the "ABSR Accounting").

The evidence produced at the hearing shows that prior to March 29, 2000 ABSR had $47,101.93. Thereafter, on March 29, 2000 and March 30, 2000, ABSR received $220,000.00 and $26,341.21, respectively, from the Debtor's estate. A review of the ABSR Accounting on those dates shows that the monies were received from the Debtor as payment for the acquisition of a combined 200 shares of ABSR stock. A review of the Debtor's Accounting confirms these transactions. At the end of the day on March 30, 2000, the total amount of funds according to the ABSR Accounting was $293,443.14. Conversely, the total amount of the Debtor's funds was $35,464.42. Miller then transferred most of the Debtor's remaining funds to Simpson on June 29, 2000.[3]

Thereafter, the following deductions from the monies held in Miller's account in the name of ABSR (not in Debtor's name) were listed as payments to Miller for either attorney's fees or retainers. The funds, however, were the Debtor's funds.

| Date | Amount Paid to Miller | Reason for Payment |
|---|---|---|
| April 13, 2000 | $5,000.00 | P. Miller Attorney Fee |
| May 12, 2000 | $5,000.00 | P. Miller Retainer |
| June 5, 2000 | $15,000.00 | P. Miller Retainer |
| June 9, 2000 | $5,000.00 | P. Miller Attorney Fee |
| June 9, 2000 | $5,000.00 | P. Miller Attorney Fee |
| June 29, 2000 | $11,000.00 | P. Miller Attorney Fee |
| September 14, 2000 | $10,000.00 | P. Miller Attorney Fee |
| November 6, 2000 | $25,000.00 | P. Miller Attorney Fee |
| November 27, 2000 | $5,000.00 | P. Miller Attorney Fee |
| February 13, 2001 | $10,000.00 | P. Miller Attorney Fee |
| March 21, 2001 | $25,000.00 | P. Miller Attorney Fee |
| June 23, 2001 | $5,000.00 | P. Miller Attorney Fee |
| June 25, 2001 | $20,000.00 | P. Miller Attorney Fee |
| **Total:** | **$146,000.00** | |

(United States Trustee, Ex. C).

---

[3] The Debtor's Accounting shows that $17.00 was held back from the funds transferred to Simpson, and that the transfer to Simpson was only $35,447.42. It is unclear as to why all of the funds were not transferred to Simpson on June 29, 2000.

These fees and payments were not authorized to be paid in connection with the Debtor's bankruptcy case, but were payments Miller made to himself on behalf of matters related to the Debtor's principal, Dr. English. As was noted above, ABSR only had $47,101.93 prior to the infusion of cash from the Debtor on March 29, 2000 and March 30, 2000. No other funds were deposited into this account on behalf of ABSR until December 5, 2001.[4] As Miller was paid approximately $146,000.00 it is clear that the source of those payments was the Debtor's net sale proceeds which had been used to purchase the stock in ABSR.

The United States Trustee also argues that Miller compensated himself an additional $32,500.00 in legal fees. In support of this contention, the United States Trustee cites two letters from Miller to Dr. English, dated October 10, 1999 and February 1, 2000. In those letters, which were written prior to and after the sale of the Debtor's assets, Miller admitted that he had received collectively $32,500.00 as payment for services related to the Debtor's bankruptcy case ($5,000.00 in the letter dated October 10, 1999, and $27,500.00 in the letter dated February 1, 2000). Both letters also show that Miller requested approximately $12,500.00 more in fees in connection with the Debtor's bankruptcy, but no evidence was provided that these additional fee requests were paid. At the evidentiary hearing and in his Proposed Findings of Fact and Conclusions of Law, Miller asserts that the $32,500.00 was paid directly by Dr. English, and was not paid from the Debtor's funds. A review of the record does not paint a clear picture as to the source of these funds.

The Court does note that regardless of the source of those funds, it is further evidence of Miller's continuous pattern of misconduct as to how he was compensated in this case. He performed work on behalf of the Debtor and either sought to compensate himself or have others compensate him (i.e., Dr. English) without Court authorization and in violation of the

---

[4] The amount deposited into the account on December 5, 2001 was $500.00 for a refund check.

Bankruptcy Code. The $32,500.00 may have come from the Debtor or it may have come from Dr. English. However, in the absence of evidence proving that the Debtor was the source of those funds, the Court cannot order Miller to disgorge those monies.

Based upon the Court's calculations and the evidence produced at the hearing, the total amount of the Debtor's funds that Miller used to pay himself was $146,000.00, which is the amount that Miller must now disgorge.

Miller used the Debtor's funds to pay his legal fees despite never being approved by the Court as bankruptcy counsel, and never being authorized to use the estate's funds to pay himself, and despite the clear terms of the Sale Order. "An attorney representing a debtor-in-possession is held to the highest standard of conduct and the failure of that attorney to comply with the various procedural requirements concerning applications for compensation may result in the court ordering the debtor's estate to be reimbursed for fees improperly received." *In re Nana Daly's Pub, Ltd.*, 67 B.R. 782, 786 (Bankr. E.D.N.Y. 1986); *see In re Arlan's Dep't Stores, Inc.*, 615 F.2d at 941, 943 (stating that an attorney seeking compensation or fees in a bankruptcy case does have a fiduciary obligation to the court). Despite the ultimate benefit to the estate, it is clear that Miller acted in clear violation of Judge Duberstein's Sale Order when he used the Estate's funds without prior Court authorization. That Miller was never retained as Debtor's counsel yet still proceeded to use the funds as he felt was appropriate shows a flagrant disregard for the Court and the Bankruptcy Code. Such actions cannot be countenanced by the Court.

Miller argues that ultimately his actions benefited the Debtor's estate, and that his actions were ratified by Judge Duberstein when Judge Duberstein approved the Debtor's motion to sell the Lots. He asserts that this inures to his benefit in the Court's consideration. The Court disagrees. The failure of any party or the court to object to one's action does not result in

9

ratification or approval of unauthorized post-petition transfers or payments of attorneys' fees without court authorization. *See In re Bartmann*, 320 B.R. 725, 742 (Bankr. N.D. Okla. 2004); *Interwest Business Equip. v. United States Trustee* (*In re Interwest Business Equip.*), 23 F.3d 311, 318 (10th Cir. Utah 1994) ("…any professional not obtaining approval is simply considered a volunteer if it seeks payment from the estate."). Miller took a gamble with the Debtor's funds, against clear instructions by the Court in the Sale Order that the funds were to be held until further Court order.

Furthermore, Miller argues that the legal fees that he was paid were for matters unrelated to the Debtor's bankruptcy. Assuming *arguendo,* that this is true, estate property that has been transferred post-petition without court authorization, which is what occurred here, still remains estate property. *See In re Merry-Go-Round Enterprises, Inc.*, 400 F.3d 219, 224-26 (4th Cir. 2004). The attorneys' fees that Miller paid to himself were on behalf of work that he performed for Dr. English, but they came from the Debtor's estate's funds. The fees must be disgorged as they were estate property and were not authorized to be paid by the Bankruptcy Court. *See In re Kendavis Industries International, Inc.*, 91 B.R. 742, 758-59 (Bankr. N.D. Tex. 1988); *In re Food Management Group, LLC*, 380 B.R. 677, 713 (Bankr. S.D.N.Y. 2008) (citing *In re Leslie Fay Cos.*, 175 B.R. 525, 538-39 (Bankr. S.D.N.Y. 1994). Such use of the Debtor's funds was unauthorized, inappropriate, and subject to disgorgement.

## CONCLUSION:

Based upon the above findings of fact and conclusions of law, the Court finds that Miller must disgorge $146,000.00 to the Debtor's estate.

Dated: Central Islip, New York
April 13, 2010

<u><em>s/ Dorothy Eisenberg</em></u>
Honorable Dorothy Eisenberg
United States Bankruptcy Judge